PEOPLE, Respondent, v. WOOD, Appellant.

No. 10,743; September 28, 1883.

**Larceny—Evidence of Similar Transactions.**—In a prosecution for larceny where, under the case as made out, the prosecuting witness had transferred money to the defendant, it was error to admit evidence of transactions of a similar nature had by the defendant with other persons, which might tend to show this to be a familiar dishonest method with him but could not show that the understanding of the parties in this particular transaction was not that the property should pass as well as the possession.[1]

---

[1] Cited in People v. Cunningham, 66 Cal. 672, 4 Pac. 1144, and distinguished in respect of the absence, in the case cited, of connection in time, place, circumstances or intent between the offense charged and the one the evidence tended to prove. But see same case, page 676 (6 Pac. 846), in a dissenting opinion.

**Larceny—Instructions—Hypothetical Case.**—In a prosecution for larceny it is error to give an instruction based on a hypothesis which assumes facts, so far as they go, like those proved at the trial, particularly when an instruction preceding contained such words as "this whole case turns upon the intent to steal at the time the money was paid."

APPEAL from Superior Court, San Francisco.

Attorney General for respondent; Leander Quint for appellant.

SHARPSTEIN, J.—The exception to the rulings of the court, on the defendant's objections to the introduction of evidence of other independent transactions, between him and persons other than the prosecuting witness, similar in character to the one which constitutes the basis of the charge on which the defendant was tried and convicted, merit careful consideration.

The defendant was charged with larceny. Whether he was guilty depended on the character of a transaction between him and the prosecuting witness, by which the latter transferred the possession of a certain sum of money to the former. If it was the understanding of the parties that the property in the money, as well as the possession of it, should pass, the fraudulent acquisition and subsequent use of it would not constitute larceny. Proof that the defendant had obtained money from other persons by means similar to those which he employed to obtain it from the prosecuting witness might tend to show that the defendant was a great knave, but would not tend to show that he did not obtain the property in the money, as well as the possession of it, by fraudulent means. The question is, Was it the understanding that the title to the money should pass? Was it borrowed, or received on deposit for a special purpose? This depends on the understanding of the parties at the time of the actual transfer. Could the defendant be permitted to prove similar transactions between him and other persons, in which it was understood that the title as well as the possession of the money passed? The court below very properly held that he could not. The understanding between him and persons other than the prosecuting witness, from whom he obtained money by means exactly similar

to those resorted to for obtaining it from the prosecuting witness, would not in the least degree tend to prove what was the understanding between the defendant and the prosecuting witness. If the understanding was the same in each case, and was such as to make the obtaining and use of the money in each case larceny, it would simply result that a defendant might be proved to have committed a series of larcenies, although charged with the commission of only one. For obvious reasons the law will not permit that to be done. "To admit evidence of such collateral acts would be to oppress the party implicated by trying him on a case as to which he has no notice to prepare, and sometimes by prejudicing the jury against him by publishing offenses, of which, even if guilty, he may have long since repented, or may have long since been condoned. Trials would, by this process, be injuriously prolonged, the real issue obscured, and the verdicts taken on side issues": 1 Wharton on Evidence, 29.

The issue in this case is whether the defendant obtained money from the prosecuting witness under such circumstances as would constitute the subsequent use of it by defendant larceny. And it was inadmissible to put in evidence the fact that he obtained money from others under similar circumstances which he used as he did that obtained from the prosecuting witness. The rule which makes the introduction of such evidence inadmissible has been recognized and applied in numerous cases. In Commonwealth v. Jackson, 132 Mass. 16, the defendant was tried and convicted on a charge of obtaining money and property by false pretenses; that is, by "falsely pretending and asserting to one John Parker that a certain horse was sound and kind, with the knowledge that such assertion was false and with intent to defraud the said Parker by inducing him to part with his money and other valuable property; and for actually defrauding him." At the trial the government was permitted to introduce evidence of similar transactions between the defendant and other persons, "solely for the purpose of showing the intent with which the defendant made the sale of the horse to Parker as charged in the indictment." This was held to be error. The court says: "The other statements made by defendant at other times as to other animals might have been false, while these were not. The transaction formed no part of a single scheme or plan

any more than the various robberies of a thief. They were entered upon as from time to time he might succeed in entrapping credulous or unwary persons." In Regina v. Holt, 8 Cox C. C. 411, the prisoner was charged with obtaining a specific sum of money from one Hirst by false pretenses, i. e., by falsely representing that he was authorized by his master to receive it. Evidence was admitted of his having obtained another sum of money from another person by a similar false pretense. On appeal it was held that such evidence was not admissible for the purpose of proving the intent of the prisoner when he committed the act charged in the indictment, and the conviction was quashed.

In Cole v. Commonwealth, 5 Gratt. (Va.) 696, the prisoner was tried on a charge of advising the slaves of E. L. to escape. Evidence of his having also advised the slave of S. A. to escape was admitted. For this error alone the judgment was reversed.

Commonwealth v. Tuckerman, 10 Gray (Mass.), 173, is not a parallel case. The defendant was indicted for embezzling the money of a corporation while acting as its treasurer. He made a statement in writing by which it appeared that while acting in the same capacity he had from time to time converted to his own use other moneys than those specified in the indictment, but belonging to the same corporation. The entire statement was admitted in evidence. No attempt was made to introduce evidence of the embezzlement by him of money belonging to any other person or corporation than the one named in the indictment. On the other hand, "all the proof which was offered in relation to transactions not intimately and directly connected with the particular accusation against the defendant, or with the evidence or in necessary explanation of the evidence, adduced to establish it, was carefully rejected."

In Commonwealth v. Merriam, 14 Pick. (Mass.) 519, 25 Am. Dec. 420, where a party was tried upon an indictment for the crime of adultery, evidence of three instances of improper familiarity between the prisoner and the female named in the indictment was admitted. But no attempt was made to prove any such familiarity between him and females other than the one so named.

In cases where it is necessary to prove scienter or intent, or of negativing accident, evidence of overt acts of the same class as that under investigation is admissible within certain well-defined limits. On the trial of a charge of holding or circulating forged paper or of receiving stolen goods, it being incumbent on the prosecution to prove that the holder or utterer of the forged paper knew it to be such, or that the party charged with receiving stolen goods knew that they had been stolen, evidence of the possession or utterance of other forged paper, or of receiving other stolen goods is admissible. "This is an exception to the general rule of evidence": Per Shaw, J., in Commonwealth v. Stone, 4 Met. (Mass.) 42.

"It may well be doubted whether the exception to the general rule of law ought to be further extended": Per Devens, J., in Commonwealth v. Jackson, supra.

In Regina v. Oddy, 15 Cox C. C. 210, Lord Campbell remarks as to the reception of evidence of other occasions where base coin or counterfeit bills are charged to have been knowingly uttered: "I have always thought that those decisions go a great way, and I am by no means inclined to apply them to the criminal law generally."

Where the proof of a single overt act might leave reasonable doubt whether it was intentional or accidental, evidence of other acts of similar character has sometimes been admitted. But in the case at bar no such question could arise. Neither is there any question as to the knowledge or intention of the defendant. The only questions which the jury had to determine were: 1. Did the defendant fraudulently obtain money from the prosecuting witness? 2. If he did, was it received on deposit for a special purpose, and unlawfully converted to his own use?

These questions being answered in the affirmative, the law would supply everything else necessary for the conviction of the defendant. And if not answered in the affirmative, proof of a thousand similar transactions with other persons would not justify his conviction. There was therefore no necessity nor occasion for the introduction of evidence which is admissible only in cases where the commission of the act charged does not necessarily imply a criminal intent. Nothing short of necessity will justify a resort to such evidence.

"It is a dangerous species of evidence, not only because it requires a defendant to meet and explain other acts than those charged against him, and for which he is on trial, but, also, it leads the jury to violate the great principle that a party is not to be convicted of one crime by proof that he has been guilty of another": Commonwealth v. Shepard, 1 Allen (Mass.), 575.

Another exception to which our attention has been directed is to that portion of the charge in which the court said: "This whole case, gentlemen of the jury, turns upon the intent to steal at the time the money was paid. . . . . If A parts with his money to B under false representations made by B for the express purpose of defrauding A, and [B makes at such time his promissory note payable to A] sometime after date, B is criminally liable immediately upon the consummation of the agreement, and it is no defense that the time has not arrived at which the note was to be paid."

It is true that, in other portions of the charge, the court referred to the distinction between larceny and obtaining property or money under false representations, based upon the intent of the party injured to part with the possession only in the one case, and to transfer his property in the money or goods in the other. But the particular instruction is based upon a hypothesis which assumes facts, so far as they go, like those proved at the trial. It, in effect, informs the jury that if the prosecuting witness "parted with his money," taking a promissory note therefor, by the terms whereof the money was to be repaid with interest—the prosecuting witness having been induced to enter into such an arrangement by "false representations" of defendant—the defendant was guilty of larceny at the moment he received the money. And this was preceded by an instruction that the "whole case" turned upon the intent of the defendant to steal (or not to steal) at the time the money was paid. Under the circumstances we cannot say the charge did not mislead the jury. Its natural meaning is, if A is induced to part with his money to B upon B's promise to repay it at a future day, A being induced to lend the money by false representations, B is guilty of larceny, although the time has not arrived at which the money was to be repaid. A promissory note is a promise in writing to pay. The jury may have understood the instruc-

tion to be what its language imports: If A is induced by the fraudulent representations of B to lend, or "part with" his money, and to take for it B's promise to repay it, B is guilty of larceny. And further, that the whole case turned on B's intent never to pay the note which, by fraudulent representations, he had induced A to receive.

Judgment and order reversed and cause remanded for a new trial.

We concur: McKinstry, J.; Ross, J.

I concur in the judgment: McKee, J.